UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JACKIE E. BAUGHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-175-TLS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Jackie E. Baughman seeks review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied him Social Security Disability benefits and erred by (1) failing to adequately account for his cervical radiculopathy and hand dysfunction, (2) failing to adequately weigh the Plaintiff's treating physician's opinion, and (3) failing to build a logical bridge from the evidence to her conclusions regarding the Plaintiff's residual functional capacity.

**BACKGROUND**

On April 22, 2014, the Plaintiff filed his Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning on December 14, 2012. (R. 18.) His claims were denied initially on August 27, 2014, and upon reconsideration on November 3, 2014. (*Id.*) On May 31, 2016, the Plaintiff appeared with a non-attorney representative and testified at a hearing before

an administrative law judge (ALJ). (*Id.*) Constance Brown, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On August 22, 2016, the ALJ denied the Plaintiff's application, finding he was not disabled as of his alleged onset date. (R. 18–33.) On February 22, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On April 22, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since his alleged onset date, December 14, 2012. (R. 20.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under §§ 404.1520(c) and 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including degenerative disc

disease of the cervical spine and lumbar spine, borderline intellectual functioning, and a somatic disorder. (*Id*.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id*.) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including hypertension, gastroesophageal reflux disease, attention deficit/hyperactivity disorder (ADHD), and kidney problems, were non-severe. (R. 20–21.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," (§§ 404.1520(a)(4)(iv), 416.920(A)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to perform less than the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), which includes:

> [L]ifting and carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for four hours in an eight-hour workday; sitting six hours in an eight-hour workday; allowed the opportunity to alternate positions for one to two minutes every half hour; occasional climbing balancing, kneeling, stooping, crouching, and crawling; avoid concentrated exposure to extreme cold; avoid moderate use of moving machinery; avoid moderate exposure to unprotected

> heights; frequent reaching, handling, and fingering with the bilateral upper extremities; the ability to understand, remember, and carry out simple instructions; work at flex pace, free of fast-paced production requirements; occasional and superficial interactions with coworkers and supervisors; may be off task no more than five percent of the workday; may be absent one day per month; and may need to use a cane for standing and walking.

(R. 23.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 24.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*) The Plaintiff stated that after a neck surgery, he continually experienced pain, as well as numbness and tingling in his left arm, despite treatment. (R. 24.) He also reported pain in his back and hips and that his symptoms were aggravated by bending or any trunk movement. (*Id.*) He further stated that he had associated problems with neuropathy and a history of seizures and kidney problems, although he had had only one seizure (in 2005) with no need for ongoing treatment and no symptoms related to his kidney problems other than frequent urination. (*Id.*)

The ALJ noted that the objective medical evidence revealed that the Plaintiff had a history of chronic pain after undergoing a cervical fusion in 2009. (*Id.*) However, despite the Plaintiff's continued pain, he received fairly conservative treatment. (*Id.*) Moreover, despite notations from the Plaintiff's treating physician, Dr. Myron, regarding degenerative disc disease and chronic pain, few clinical deficits were recorded. (R. 25.) The only treatment advised was pain medication. (*Id.*) A neurosurgeon, after examining the Plaintiff, advised the Plaintiff against

further surgery on his cervical spine and indicated that he did not recommend cubital tunnel surgery or ulnar nerve decompression despite finding bilateral ulnar nerve changes. (R. 26–27.) Dr. Myron also noted a diagnosis of ADHD but did not prescribe any medication or recommended a formal psychiatric evaluation. (R. 27.)

The ALJ afforded Dr. Myron's opinion little weight despite the fact that he was the Plaintiff's treating physician because the ALJ found that Dr. Myron's treatment notes failed to support his opinion regarding the Plaintiff's functional limitations. (R. 28.) The ALJ found that Dr. Myron's opinion that the Plaintiff was disabled was based primarily on subjective complaints of pain, as well as the Plaintiff's inability to perform his prior, labor-intensive work, and therefore, the opinion was not substantially supported by other portions of the record. (*Id.*)

The ALJ also looked to the Plaintiff's daily living activities and found that they did not support the degree of limitation alleged. The Plaintiff stated that he spent most of his time watching television, had no problems with items of personal care, and drove his son to school each day. (R. 29.) He could perform only limited household chores but could engage in "fairly normal activities," although at a slower pace. (*Id.*) The ALJ also noted that in the fall of 2013, the Plaintiff was involved in a non-motorized scooter accident, which did not tend to support his allegations of disability. (*Id.*) In a third-party function report, the Plaintiff's wife stated that the Plaintiff was extremely limited in his daily activities. She reported that the Plaintiff has a hard time getting out of bed; can fold the laundry and do some dishes, but it took him a long period of time to complete those tasks; and attempts to perform chores, but must be careful to not aggravate his symptoms in doing so. (R. 30.) The ALJ discounted the Plaintiff's wife's opinion due to potential bias and the fact that there is "no evidence that can objectively verify her discussion of his activities of daily living." (*Id.*)

The Plaintiff has past relevant work as a water meter installer, meter reader, construction worker, and cement mason, all of which were performed above the sedentary level. (R. 31.) The ALJ therefore found that the Plaintiff was unable to perform past relevant work. However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 32.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act. (R. 33.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in

evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the Commissioner wrongfully denied him Social Security Disability benefits and erred by (1) failing to adequately account for his cervical radiculopathy and hand dysfunction both in the RFC analysis at step four and the Listing analysis at step three, (2) failing to adequately weigh the Plaintiff's treating physician's opinion, and (3) failing to build a logical bridge from the evidence to her conclusions regarding the Plaintiff's RFC.

**A.	Logical Bridge to RFC**

The Plaintiff argues that the ALJ did not adequately build a logical bridge between the evidence of record and the Plaintiff's RFC. Among the findings with which the Plaintiff takes issue are (1) that he could use his hands frequently despite his partial hand function, (2) that the Plaintiff needed to spend up to two minutes to shift his postural positions every half hour but could be off task for no more than five percent of the work-day, and (3) that the Plaintiff was allowed only occasional and superficial interaction with coworkers and supervisors but could have unlimited interaction with the general public.

The Court agrees with the Plaintiff that the ALJ's RFC finding is logically inconsistent, at least as to the limitation regarding his need to change positions. The ALJ specifically allowed up to two minutes every half hour,[1] to change positions which, over the course of an eight-hour day, adds up to 32 minutes. However, the ALJ also specifically provided that the Plaintiff could be off task no more than five percent of the time. Over the course of an eight-hour day, five percent of the time constitutes only 24 minutes, which would not accommodate up to two minutes to change position every half hour.

The Court notes that the Seventh Circuit gives an ALJ's opinion a "commonsensical reading rather than nitpicking at it." *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999). "But, rejecting an opinion that expresses an RFC in inconsistent ways is far from nitpicking: it is a recognition that the opinion contains internal contradictions that are fatal to meaningful review." *Pickett v. Barnhart*, No. 04 C 522, 2004 WL 1535847, at *9 (N.D. Ill. July 7, 2004) (citing *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). The ALJ's discussion of the evidence supports a limitation regarding the Plaintiff's need to change positions throughout the day, and

---

[1] The Commissioner states that the RFC allows for one to two minutes to change positions every hour, not every half hour. That is not the case.

the limitation regarding the amount of time that the Plaintiff can be off task is supported by the testimony of the VE. Neither the Court nor the parties can determine which of these two limitations the ALJ meant to include in the RFC because they are inherently contradictory. Therefore, the ALJ has not built a logical bridge from the evidence to her conclusions, and the Court must remand this case. On remand, the Court encourages the ALJ to also consider the Plaintiff's other alleged logical inconsistencies.

**B.     Credibility**

The Plaintiff argues that the ALJ improperly discounted his testimony regarding the extent and limiting effects of his pain. "An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (*citing Craft*, 539 F.3d at 678). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016). "The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. "[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)). A credibility determination does not need to be flawless. *Id.* "[A] credibility determination will stand as long as there was some support in the record even if some of the ALJ's credibility determinations were a bit harsh." *Whetzel v. Astrue*, No. 1:07-CV-210, 2009 WL 537640, at *2 (N.D. Ind. Mar. 4, 2009) (citing *Berger*, 516 F.3d at 546).

The ALJ's reasoning for rejecting the Plaintiff's subjective testimony includes a lack of objective medical evidence, the Plaintiff's ability to engage in daily living activities, and the conservative nature of the treatment the Plaintiff received for his pain, all of which suggested that the Plaintiff was not as limited as he alleged.

The Commissioner correctly notes that an individual's daily activities are among the factors that an ALJ must consider in making such a determination. *See Craft*, 539 F.3d at 660. Social Security "regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). The Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of

minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores as these alone are not sound bases for a credibility determination.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)).

In this case, the ALJ failed to articulate why the Plaintiff's daily living activities were incompatible with his subjective testimony or how his daily living activities demonstrated that he could hold a full-time job. *See Pinder*, 2010 WL 2243248, at *5 ("Although objective medical evidence and daily activities are appropriate factors to consider, the ALJ failed to articulate how these factors supported or contradicted any particular claims made by the Plaintiff."). The ALJ cited the Plaintiff's testimony that he had no problems with items of personal care; could perform limited household chores; conducted other fairly normal activities, albeit at a slower pace; and was involved in a non-motorized scooter accident after his alleged onset date. (R. 29.) The Plaintiff's wife's statement corroborated this testimony, but the ALJ discounted her report, finding that it was "possible that the claimant's wife is less than completely objective in forming her opinion." (R. 30.) However, "the ALJ should not simply reject Plaintiff's witness because of potential bias." *Natt v. Colvin*, No. 2:14-CV-81, 2015 WL 1418792, at *9 (N.D. Ind. Mar. 27, 2015) (citing *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)); *see also Ruiz v. Berryhill*, No. 2:17-cv-81, 2018 WL 1517077, at *6 (N.D. Ind. Mar. 28, 2018) (finding error where ALJ discounted wife's opinion due to her familial relationship and conflicts with the objective medical evidence). In fact, the Seventh Circuit has rejected the notion that the testimony of

somebody related to the Plaintiff "must automatically be discounted for bias." *Garcia*, 741 F.3d at 761. Rather, "[t]he [ALJ] should have made clear whether [s]he believed the [wife's] testimony or not, or which part [s]he believed, or whether [s]he had no idea how much of what [the wife] said was worthy of belief." *Id.* However, the potential for bias and the lack of objective medical evidence are the only reasons the ALJ gave for discounting the Plaintiff's wife's statement regarding the Plaintiff's ability to engage in daily living activities. Because "the whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records," *Stephens v. Colvin*, No. 1:13-CV-66, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014), and because potential bias is not an automatic reason to discount a spouse's testimony, the Court is unable to meaningfully review the ALJ's decision insofar as it relies on the Plaintiff's daily living activities. The ALJ is required to evaluate evidence that is contradictory to the ultimate conclusion and may not dismiss such evidence out of hand merely because it is contradictory to that ultimate conclusion. The Court is not convinced that the ALJ has sufficiently explained why the contradictory evidence does not persuade. *See Berger*, 516 F.3d at 544.

The Commissioner notes other reasons that the ALJ cited to discount the Plaintiff's subjective testimony, including the lack of objective medical evidence, the conservative nature of the Plaintiff's treatment, and the fact that the Plaintiff was generally treated only with medication, as opposed to, for example, surgery. An ALJ cannot draw a negative inference based on a claimant's failure to obtain *adequate* treatment, even if he has sought some treatment during the relevant time period. *See Visinaiz v. Berryhill*, 243 F. Supp. 3d 1008, 1014 (N.D. Ind. 2017) (remanding where "the ALJ did not ask the claimant about her perceived failure to seek adequate treatment" when the claimant's only treatment was through medication that provided "some

benefit"); *Parker v. Colvin*, No. 2:15-CV-316, 2016 WL 4435622, at *5 (N.D. Ind. Aug. 22, 2016) (remanding where "[t]he ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate" without "ask[ing] Plaintiff about her physical therapy appointments or pain medication regime[n], and did not credit the pain medications Plaintiff did take"). The ALJ mentioned the Plaintiff's treatment regimen multiple times throughout the decision (see R. 25, 27, 30), and it appears that the perceived inadequacy of treatment, i.e., the lack of treatment other than medication, contributed significantly to the ALJ's credibility finding. Considering the other errors in the ALJ's analysis, the Court is not persuaded that the ALJ has built a logical bridge between this perceived inadequacy and the Plaintiff's credibility.

The Court does not find that the remainder of the ALJ's justifications for discounting the Plaintiff's credibility overcome these errors. Therefore, the Court must remand this case so that the ALJ can conduct an appropriate credibility determination and build a logical bridge from the evidence to her conclusions.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on these issues, it need not address the remainder of the parties' arguments.

SO ORDERED on May 10, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT